# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE ARTEM,<br><br>      Plaintiff,<br><br>v.<br><br>NEW ENGLAND LAW \| BOSTON and<br>SCOTT BROWN, in his official capacity as<br>President and Dean,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 1:21-cv-10981-WGY |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

This is another in a string of lawsuits brought by students challenging policies implemented by colleges, universities, and other institutions of higher education designed to respond to the global COVID-19 pandemic while continuing to provide students excellent education. Here, George Artem[1] seeks to challenge New England Law | Boston's ("New England Law") policy mandating masking and social distancing for all students, faculty, and staff on campus who have not been vaccinated against COVID-19.

Unexpectedly for Mr. Artem and New England Law, Mr. Artem began his law school career during the pandemic. In consultation with a specially appointed task force and with input

---

[1] While Mr. Artem is not represented by an attorney in this action, he is no ordinary *pro se* litigant. In fact, he has a long history of *pro se* litigation. *See North Dakota v. Artem*, No. 1:17-cr-059, 2017 WL 921843 (D.N.D. Mar. 8, 2017) (remanding to state court Mr. Artem's prosecution for criminal trespass following his attempt to remove prosecution to federal court); *Artem v. North Dakota*, No. C17-0798RSM, 2017 WL 11553485 (D. Wash. Jul. 10, 2017) (dismissing complaint seeking "federal intervention into an ongoing state criminal dispute" concerning criminal charges pending in North Dakota against Mr. Artem); *Artem v. King Cnty. Dep't. of Adult & Juvenile Detention*, 8 Wash. App. 2d 1046 (2019) (affirming dismissal of complaint alleging $150 million in damages from psychiatric treatment provided by the State of Washington following Mr. Artem's arrest for attempted second-degree kidnapping of an eight-year-old girl), *rev. denied*, 193 Wash. 2d 1038 (Wash. 2019), *cert. denied*, 140 S. Ct. 1123 (2020).

from students, faculty, staff, and alumni, New England Law implemented a number of public health measures for the 2020-2021 academic year to protect members of the New England Law community. Among the measures implemented was a requirement that all students, faculty, and staff be masked and maintain social distancing while on campus. In May 2021, with increasing availability of COVID-19 vaccines and new guidance from the Centers for Disease Control and Prevention (the "CDC"), New England Law updated its COVID-19 policy to reflect the current guidance that fully vaccinated individuals did not need to continue masking and social distancing in most circumstances. This is the policy Mr. Artem challenges.

Only one cause of action – breach of contract – is readily discernable from Mr. Artem's Complaint (ECF No. 1). His claim seems to be that New England Law's updated COVID-19 policy breaches the terms of a scholarship Mr. Artem contends was "unconditional." This claim fails as a matter of law. First, in accepting the scholarship, Mr. Artem explicitly agreed to stipulations and requirements, including that he would abide by New England Law's policies. Second, Mr. Artem separately and explicitly agreed in writing to abide by New England Law's COVID-19 policy, which he was on notice would be updated as information became available and new guidance from authorities issued. Third, New England Law has the legal right to implement policies to protect the health and safety of the entire New England Law community – up to and including mandating masking, social distancing, and/or COVID-19 vaccination. Mr. Artem cannot make a colorable breach of contract claim, and so his Complaint should be dismissed.

The remainder of Mr. Artem's Complaint leaves New England Law and its president and dean, Scott Brown,[2] (and the Court) to guess as to the nature of his claims. This, itself, merits dismissal under Fed. R. Civ. P. 8(a)(2).

_____

[2] Mr. Artem does not make any allegations or state any claims against Dean Brown that are separate

In addition, on June 25, 2021, Mr. Artem filed a Petition for Injunctive Relief (ECF No. 8) (the "Petition") in which he seems to supplement his Complaint with the assertion of constitutional claims under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. He also at least references Title IX. These claims, even if they were stated in Mr. Artem's Complaint, likewise fail. With respect to the Fourth, Fifth, and Fourteenth Amendments, New England Law is not a state actor or acting under color of state law, and so Mr. Artem cannot state those constitutional claims against it – a point Mr. Artem seems to concede. With respect to Title IX, nowhere does Mr. Artem allege that he is being subject to discrimination based on his sex. Indeed, the purported discrimination he alleges relates to his vaccination status and/or his willingness to wear a mask and social distance. This is far outside the purview of Title IX.

Because the Complaint, as supplemented by the Petition, does not state a legally cognizable claim, it should be dismissed in its entirety.

## FACTUAL BACKGROUND

### A.     Mr. Artem's Matriculation at New England Law and Acceptance of the Justice Sandra Day O'Connor Scholarship.

In January 2020, Mr. Artem was offered, and accepted, admission to New England Law, with a "no strings attached" Sandra Day O'Connor Scholarship (the "Scholarship"), which covered his full tuition for the 2020-2021 academic year. Compl. ¶¶ 1-3; *see also* Exh. 1 (Jan. 28, 2020 Letter from J. Chambers to G. Artem).[3]

---

from those against New England Law. Because the Complaint fails against New England Law, it similarly fails against Dean Brown.

[3] As discussed in more detail below, "the relationship between a university and its students has a strong, albeit flexible, contractual flavor [that] is . . . pretty well accepted in modern case law." *Dinu v. Pres. & Fellows of Harvard Coll.*, 56 F. Supp. 2d 129, 130 (D. Mass. 1999) (citing *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998)). The flexible character of the student-university contractual relationship means that the terms of the contract may be expressed in brochures, student handbooks, policy manuals, and other materials. *Guckenberger v. Bos. Univ.*, 957 F. Supp.

### B.     New England Law's Precautions Due to COVID-19 Pandemic.

In reliance on New England Law's representations, Mr. Artem moved to Boston in the summer of 2020. Compl. ¶ 4. He attended his first year of law school in the evening division. *Id.* ¶ 5. Of course, given the global COVID-19 pandemic that had taken hold, the 2020-2021 academic year was far from typical. During this time, New England Law instituted COVID-19 precautions, requiring social distancing, masks, testing, and other steps. *Id.* ¶ 6.

### C.     New England Law's Revised COVID-19 Precautions.

On May 28, 2021, New England Law announced a change in its COVID-19 precautions. Mr. Artem asserts that this change "required proof" that he had received "experimental mRNA injection, effectively requiring [him] to wear a mask, comply with the previous PCR testing policy and socially distance while on campus." Compl. ¶ 9.

### D.     The Alleged Wrongful Acts.

Mr. Artem claims that the May 28, 2021 policy change is a repudiation of the promise made to him that the Scholarship would be "unconditional" and constitutes breach of contract. Compl. ¶ 9. He also claims that this policy change constitutes "intimidation," "medical discrimination," and "disregard for informed consent by omission." *Id.*

Before New England Law announced the new policy, Mr. Artem had asked for the school's COVID-19 precautions to include "ethical, philosophical or religious exemptions" and for the school to "advise students of their right to refuse" COVID-19 vaccination. Compl. ¶¶ 7-8. After

---

306, 317 (D. Mass. 1997). The Court can consider these materials on a motion to dismiss. *See Barkhordar v. Pres. & Fellows of Harvard Coll.*, No. 1:20-cv-10968-IT, 2021 WL 2535512, at *3 (D. Mass. Jun. 21, 2021). In general, the Court can consider documents whose authenticity is undisputed, that are central to the claims, or that are referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). Accordingly, in addition to including documents which comprise the "contract," New England Law includes documents setting forth the COVID-19 precautions that it put in place, which comprise the purported "breach."

New England Law announced the policy change, he asked for the school to retract the policy and inform students that they have the right to refuse the vaccine and "any additional experimental treatment or devices," and he received no response. *Id.* at ¶¶ 10-13.

The Complaint is devoid of any further particulars regarding the alleged "unconditional promise" or the policy change that Mr. Artem contends breached the unconditional promise. The underlying documents reflect the following.

### E.      The So-Called "Unconditional" Promise

Mr. Artem's breach of contract claim is based on the "no strings attached" and "unconditional" Scholarship. The documents show that the Scholarship is a merit-based scholarship awarded to incoming students "who show exceptional academic promise." Exh. 2 (https://www.nesl.edu/academics-faculty/justice-sandra-day-oconnor-honors-program, last accessed Jul. 6, 2021). The Scholarship is referred to as "no strings attached," but only in connection with the elimination of a prior academic achievement requirement. Before the 2019-2020 academic year, the Scholarship was renewed annually only if a student recipient maintained a certain level of academic performance. Exh. 3 (https://www.nesl.edu/blog/detail/justice-sandra-day-o'connor-honors-program-to-benefit-exceptional-students, accessed Jul. 6, 2021). Beginning in the 2019-2020 academic year, New England Law implemented the "no strings attached" policy for the Scholarship by removing the requirement that scholarship recipients maintain a certain level of academic performance in order for the Scholarship to renew. Exh. 2.

The Scholarship acceptance form makes clear that students were otherwise required to meet certain expectations, including complying with any student rules. The form states that the Scholarship will renew annually,

105728\000028\3841613

so long as you do the following:

Enroll in and complete a minimum of 12 graded credits every semester between matriculation and graduation. Part-Time students receiving scholarships must enroll in and complete a minimum of 9 graded credits each of these semesters.

Comply with the law school's student rules and remain free from disciplinary sanctions.

Exh. 4 (Jun. 25, 2020 Email from donotreply@nesl.edu to FinAid@nesl.edu).

Moreover, in accepting the Scholarship, Mr. Artem explicitly agreed that he had "read and underst[ood] the stipulations and requirements for renewing [his] scholarship." *Id.* In addition, in accepting admission to New England Law, Mr. Artem "agree[d] to abide by its rules and regulations." Exh. 5 (Apr. 8, 2020 Email from G. Artem to New England Law Admissions, et al.).

### F.    The So-Called Breach

New England Law issued an updated COVID-19 policy on May 28, 2021 (the "Updated Policy"), which explained that "[b]eginning on Tuesday, June 1, 2021" there would be a "revised testing and social distancing protocol" for "faculty, staff and students who are fully vaccinated" and that individuals who are *not* fully vaccinated "must continue to follow the existing protocol for testing and social distancing." Exh. 6. (May 28, 2021 Updated Policy). The Updated Policy requires fully vaccinated individuals to provide proof of vaccination to New England Law, with all such records remaining confidential. *Id.* The Updated Policy does not require any faculty, staff, or students to be vaccinated against COVID-19.

As with all things COVID-19-related, the epidemiological situation and guidance is continually evolving. Mr. Artem challenges the New England Law policy in effect as of the filing of his civil action. New England Law, like many institutions of higher education, continues to evaluate its policies and consider changes and refinements in light of the evolving situation and guidance. In fact, on June 28, 2021, New England Law announced that all students, staff, and

6

faculty must be fully vaccinated for COVID-19 before returning to campus, with exceptions available on medical and religious grounds. *See* Exh. 7 (Jun. 28, 2021 COVID-19 Vaccination Policy and COVID-19 FAQ).

Indeed, Mr. Artem agreed to abide by New England Law's COVID-19 policies and updates thereto before he started his first year. On or about August 1, 2020, New England Law issued the first iteration of its "Return to Campus Plan" (the "Campus Plan") in order to "bring our community back to campus safely, in accordance with best practices and evolving government guidelines, while also preserving fundamental learning, social, and professional development opportunities for our students." Exh. 8 (Campus Plan) at 1. The Campus Plan reflects "the best opportunity for our law school to continue to thrive during the global pandemic" while "[b]alancing the diverse needs of our community and the evolving guidance from the City of Boston and the Commonwealth of Massachusetts." *Id.*

To that end, the Campus Plan implemented "[s]trict safety protocols, including requirements for all members of the community to adhere to physical distancing, mandatory use of face coverings, hand hygiene, and self-monitoring." *Id.* at 2. Specifically, the Plan provides that "[p]rotective face coverings are required upon entry to the school, in rented classroom and adjacent space at the Revere Hotel, and in all common or shared areas of the school and Library, including classrooms" and "students and faculty are required to wear face coverings during all classes." *Id.* at 3. In addition, "everyone [is] required to observe physical distancing of at least six feet in classrooms, common spaces, and the Library, and elsewhere in the building wherever possible." *Id.* The Plan also requires "[h]ealth screening consistent with guidelines promulgated by the Centers for Disease Control and Prevention . . . for all individuals on campus." *Id.* at 5.[4]

---

[4] As a result of its Campus Plan, New England Law did not experience any clusters of COVID-19

Mr. Artem agreed to abide by the Campus Plan, and he acknowledged that his failure to comply with the Campus Plan, *or any updates to the Plan*, could subject him to disciplinary action. In particular, Mr. Artem, like all students enrolled at New England Law during the 2020-2021 academic year, was required to sign a "shared responsibility and community safety Pledge" (the "Safety Pledge"). Exh. 9. In signing the Safety Pledge, Mr. Artem affirmed that:

- he had "read, fully underst[ood], and [would] abide by the policies and protocols in the Return to Campus Plan";

- he understood that the policies and protocols in the Plan "may be updated as needed to promote the health and safety of the community";

- "failure to adhere to the [Campus Plan and Safety Pledge], and any other policies and protocols adopted to promote the health and safety of the New England Law community, will be subject to disciplinary action";

- he would "participate in testing, health screening, and contact tracing protocols established by the law school as a condition of being present on campus"; and

- he would "follow all personal safety measures, including protocols for face covering, hand washing and hygiene practices, and physical distancing."

*Id.* at 1.

For fully vaccinated individuals, the Updated Policy relaxed some of the August 2020 requirements, explaining that regular testing and mask and physical distancing requirements are no longer required for fully vaccinated persons unless they are symptomatic. Exh. 6.

The Updated Policy memorialized guidance from the CDC for individuals fully vaccinated against COVID-19. *Compare* Exh. 6 *with* Exh. 10 (CDC, "When You've Been Fully Vaccinated," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html, accessed Jul. 6, 2021). *See also* Exh. 11 (Commonwealth of Massachusetts, Department of Public Health, Advisory Regarding Face Coverings and Cloth Masks, https://www.mass.gov/doc/updated-

---

infection and the rate of COVID-19 infection within the New England Law community was miniscule as compared to the rest of Massachusetts or the United States.

advisory-regarding-face-coverings-may-17-2021/download, accessed Jul. 6, 2021 (discussing relaxed masking and social distancing requirements for those who are fully vaccinated)).

The newest policy, implemented on June 28, 2021, continues the New England Law's evolution and development of its COVID-19 precautions in response to the evolving epidemiological situation and relevant guidance. *See, e.g.*, Exh 12 (CDC, "Considerations for Institutions of High Education, https://www.cdc.gov/coronavirus/2019-ncov/community/colleges-universities/considerations.html, accessed Jul 6, 2021); Exh. 13 (CDC, "Key Things to Know," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html, accessed Jul. 6, 2021).

Apparently unwilling to continue complying with the Campus Plan and Safety Pledge he previously agreed to, Mr. Artem filed this lawsuit. On June 25, 2021, Mr. Artem also filed a Petition for Injunctive Relief, which appears to be a supplement to his Complaint. *See* Petition. In that Petition, he claims that New England Law's policy violates his "rights to procedural and substantive due process and equal protection under the Fifth and Fourteenth Amendments, and to be free from unreasonable searches and seizures and to privacy under the Fourth Amendment." Petition at 4. Mr. Artem also invokes Title IX. *Id.* Mr. Artem amended his Petition on July 2, 2021, which he now designates as an, "Amended Motion for Injunctive Relief." (ECF No. 9). In his Amended Motion, Mr. Artem expressly challenges New England Law's new policy requiring vaccination. For the reasons set forth below, Mr. Artem's challenge to the Updated Policy and the new policy must fail.

## ARGUMENT

### A.    The Legal Standard

The Fed. R. Civ. P. 12(b)(6) motion to dismiss standard is well settled. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Whitman & Co. Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-cv-12047-ADB, 2015 WL 4467064, at *6 (D. Mass. Jul. 20, 2015) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When considering whether the plaintiff has pled a plausible claim, "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]." *Watterson*, 987 F.2d at 3. This does not mean, however, "that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). Similarly, the requirement that the court accept as true well-pleaded factual allegations does not extend to legal conclusions. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" *Id*. (*quoting Ashcroft*, 556 U.S. at 678.).

Accordingly, a court should disregard statements that amount to "threadbare recitals of the elements of a cause of action," and "bald assertions, subjective characterizations and legal conclusions." *See, e.g.*, *Faculty, Alumni, & Students Opposed to Racial Preferences* v. *Harvard Law Rev. Ass'n*, No. CV 18-12105-LTS, 2019 WL 3754023, at *4 (D. Mass. Aug. 8, 2019). A court is also to disregard allegations that are contradicted by documents attached to or referenced in the complaint. *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n.1 (1st Cir. 2013) (rejecting allegations as not having "the presumption of truth" where they were contradicted by a letter referenced in the complaint).

While "pro se complaints are to be read liberally," they cannot be "so hopelessly general that they could give no notice of [the plaintiff's] claims." *Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir. 1980). Even read liberally, Mr. Artem's Complaint fails to state a claim and, therefore, should be dismissed.

### B.   Mr. Artem's Breach of Contract Claim Fails as a Matter of Law.

The only recognized cause of action that can be gleaned from Mr. Artem's Complaint is a claim for breach of contract. *See* Compl. ¶ 9. "In order to state a viable breach of contract claim under Massachusetts law, plaintiffs must prove that [1] a valid, binding contract existed, [2] the defendant breached the terms of the contract, and [3] the plaintiffs sustained damages as a result of the breach." *E.g.*, *Penney v. Deutsche Bank Nat'l Tr. Co.*, No. 16-CV-10482-ADB, 2017 WL 1015002, at *4 (D. Mass. Mar. 15, 2017) (citations omitted).

The gravamen of Mr. Artem's claim is that New England Law's COVID-19 policies breached the promise that his Scholarship had "no strings attached." *See* Compl. ¶ 9. These allegations are flatly contradicted by the underlying documents, which demonstrate that there were no contractual restrictions that prohibited New England Law from instituting the Updated Policy, the new policy requiring vaccination, or any other COVID-19 precautions. The breach of contract claim thus fails as a matter of law and should be dismissed.

In general, the contractual relationship between a student and a postsecondary institution "can be derived from statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials" and written policies. *Mass. Inst. of Tech. v. Guzman*, No. 14-P-1803, 2016 WL 4395356, at *5 (Mass. App. Ct. Aug. 18, 2016) (citing *Mangla*, 135 F.3d at 83; *Guckenberger*, 974 F. Supp. at 150; and *Dinu*, 56 F.Supp.2d at 130). In addition, "in the context of the unique relationship between a student and [his] university, [courts] employ the 'reasonable expectation' standard . . . to determine what meaning the university should

reasonably expect students to give to its various manifestations." *Id.* (citing *Cloud v. Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2003); and *Driscoll v. Trustees of Milton Acad.*, 70 Mass. App. Ct. 285, 293 (2007)).

In this case, the documents that comprise the "contract" expressly give New England Law leeway to impose rules governing student conduct, and require Mr. Artem to abide by these rules. The key documents include the Scholarship and admission acceptance forms, which in turn incorporate by reference New England Law's policies governing student conduct. In executing the Scholarship acceptance form, Mr. Artem agreed that he had "read and underst[ood] the stipulations and requirements for renewing [his] scholarship," including the requirements that he enroll for a certain number of credits each semester and that he would "[c]omply with the law school's student rules and remain free from disciplinary sanctions." Exh. 4. In addition, in accepting admission to and enrolling at New England Law, Mr. Artem "agree[d] to abide by its rules and regulations." Exh. 5. Moreover, in signing the Safety Pledge, Mr. Artem agreed that he would comply with New England Law's COVID-19 precautions. Exh. 9.

To try and get around the clear language in the documents that he signed, Mr. Artem seizes on the phrase "no strings attached," included in the description of the Scholarship. *See* Compl. ¶ 9. As noted above, however, the school added the "no strings attached" language when it eliminated the requirement for students to maintain a certain level of academic excellence. In any event, this language does not promise that a student will receive the scholarship no matter what happens. To the contrary, immediately after the statement that the Scholarship comes with "no strings attached," the Scholarship description explains that the Scholarship requires a student to be "enrolled in the JD program at New England Law" (Exh. 2), which, in turn, requires compliance with all student-related rules and requirements, as made clear in the acceptance forms. *See* Exh. 5.

Accordingly, Mr. Artem, like other students, needs to comply with rules governing student conduct, as he expressly acknowledged and agreed on multiple occasions. His allegations in the Complaint to the contrary are contradicted by the express language of the acceptance forms, and thus cannot help him survive dismissal. *See, e.g.*, *Penney*, 2017 WL 1015002, at \*4-5 (dismissing breach of contract claim where allegations were contradicted by the terms of the underlying contractual documents).

Moreover, under Mr. Artem's interpretation of the contract, New England Law could not impose any restrictions on his conduct whatsoever. Instead, the school would be required to excuse him from compliance with all of the school's polices and for any type of misbehavior, including criminal conduct – a nonsensical result. Not to put too fine a point on it, but neither Mr. Artem nor any other student could have a reasonable expectation that their admission, matriculation, or scholarship was guaranteed regardless of whether and how they flaunted the school's rules.

Mr. Artem's interpretation of the contract is also in direct contradiction to New England Law's health and safety obligations. The realities of the past year and a half cannot be ignored, as this Court is well aware. *See, e.g.*, *Delany v. Baker*, No. 20-11154-WGY, 2021 WL 42340 (D. Mass. Jan. 6, 2021) (Young, D.J.) (holding that state masking and social distancing orders did not violate religious liberty where "[i]t has been proven that the wearing of masks can slow the transmission of the spread of the coronavirus."); *Savino v. Souza*, 459 F. Supp. 3d 317, 324-28 (D. Mass. 2020) (Young, D.J.) (finding immigration detainees likely to suffer irreparable harm where testing and screening efforts were insufficient to prevent asymptomatic spread: "There is still much to learn about the COVID-19 virus and its confoundingly uneven assault on humanity. . . . [I]t cannot be denied that the virus is gravely dangerous to all of us." (internal citations and quotations omitted)).

13

In response to the COVID-19 global pandemic, colleges and universities – indeed, the entire country and global community – have had to made adjustments to protect the public health. Before attending New England Law, Mr. Artem was informed of and agreed to the Campus Plan and Safety Pledge and their requirement to mask and social distance while on New England Law's campus. Exhs. 8 and 9. The Updated Policy (and the more recent vaccination policy[5]) is simply a response to the evolving epidemiological situation and guidance, specifically as relates to vaccinated individuals. Exhs. 6 and 7; *see also* Exh. 12 (CDC, "Considerations for Institutions of Higher Education," updated June 4, 2021) § 1 ("[Institutions of Higher Education] can play a critical role in offering and promoting vaccination . . . to help slow the spread of COVID-19 and prevent interruptions to in-person learning. Vaccination is the leading prevention strategy to protect individuals from COVID-19 disease and end the COVID-19 pandemic. Current COVID-19 vaccines authorized for use in the United States are safe and effective, widely accessible in the U.S., and available at no cost to all people living in the U.S.").

Mr. Artem's breach of contract claim fails as a matter of law and should be dismissed.

---

[5] As noted above, New England Law announced on June 28, 2021, that it will require students, staff, and faculty to be vaccinated against COVID-19 before coming to campus for the next school year. Legal precedent going back more than 100 years affirms the right of K-12 public schools, which are state actors for constitutional purposes, to mandate vaccinations. *See Jacobson v. Mass.*, 197 U.S. 11, 32 (1905); *see also Zucht v. King*, 260 U.S. 174, 175-77 (1922). The Court in *Jacobsen* explained that the "liberty secured by the Constitution . . . does not import an absolute right in each person to be, at all time and in all circumstances, wholly freed from restraint." 197 U.S. at 26. Rather, "**a community has the right to protect itself against and epidemic of disease which threatens the safety of its members**." *Id.* at 27 (emphasis added). This holding was recently affirmed with respect to an influenza vaccination mandate at a public university. *See Kiel v. Regents of the Univ. of Cal.*, No. HG20-072843, 2020 WL 9396579 (Cal. Super. Ct. Dec. 4, 2020). Public institutions, which as state actors are constrained by a host of constitutional requirements not applicable to private institutions, have broad authority to require vaccinations as a condition of attendance. Private institutions, such as New England Law, have no less authority – especially in a global health crisis such as the COVID-19 pandemic.

C.      **The Complaint Otherwise Fails to Show that Mr. Artem Is Entitled to Relief.**

Having demonstrated that any breach of contract claim Mr. Artem purports to bring should

be dismissed, the Court should dismiss the remainder of the Complaint for failing to comply with

Fed. R. Civ. P. 8(a)(2).

It has long been established that a Complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the "First

Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers . . . this

cannot be taken to mean that pro se complaints are held to no standard at all." *Daniels v. Varela*,

No. CV 19-10623-DJC, 2020 WL 5440574, at *3 (D. Mass. Sept. 10, 2020), *appeal dismissed*,

No. 20-2104, 2021 WL 2253991 (1st Cir. Mar. 22, 2021) (quoting *Green v. Mass.*, 108 F.R.D.

217, 218 (D. Mass. 1985)). The "minimal requirements [of Fed. R. Civ. P. 8(a)(2)] are not

tantamount to nonexistent requirements." *Id.* (internal quotation marks omitted). Thus, even

though a *pro se* complaint is liberally construed, "'the burden is on [plaintiff to] set forth plausible

claims upon which relief may be granted and to provide sufficient notice to [defendants] of [his]

claims.'" *Id.* (quoting *Ghazarian v. Am. Home Mortg. Serv. Wells Fargo*, No. 11-cv-11277-PBS,

2013 WL 4411758, at *4 (D. Mass. July 18, 2013)).

It is not for the Court to "conjure up questions never squarely presented to [it] or to

construct full blown claims from sentence fragments." *Ghazarian*, 2013 WL 4411758, at *4 (citing

*Ateek v. Mass.*, No. 11–11566–DPW, 2011 WL 4529393, at *3 n.7 (D. Mass. Sept. 27, 2011), in

turn quoting *Terrance v. Cuyahoga Cnty.*, No. 1:05 CV 1926, 2005 WL 2491531, at *1 (N.D. Ohio

Oct.7, 2005)). "Such an exercise by the court would 'require . . . [the courts] to explore

exhaustively all potential claims of a pro se plaintiff, . . . [and] would . . . transform the district

court from its legitimate advisory role to the improper role of an advocate seeking out the strongest

arguments and most successful strategies for a party." *Id.* Nor is it the defendant's burden "to

15

speculate on the potential claims that a plaintiff may be raising against it and the defenses it might assert in response to each of these possible causes of action." *Id.* (quotations and citations omitted). Aside from Mr. Artem's reference to breach of contract, which is disposed of above, his Complaint fails to meet the Fed. R. Civ. P. 8(a)(2) standard and, should therefore, be dismissed.

The Complaint does not explicitly identify any counts specifying causes of action. The closest the Complaint gets is the allegation that the Updated Policy constituted a "repudiat[ion of New England Law's] promise to Mr. Artem that his scholarship would be unconditional, amounting to intimidation, medical discrimination, disregard for informed consent by omission, and breach of contract." Compl. ¶ 9. The allegation that New England Law repudiated a promise and breached a contract with Mr. Artem, as demonstrated above, fails, and the remainder of this allegation and the Complaint fails to identify any cognizable federal or state causes of action. "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, however, Mr. Artem does not allege sufficient facts for either the Court or New England Law to intuit his causes of action.

New England Law and the Court, thus, are left to guess at what possible causes of action might be raised by the minimal allegations of the Complaint. Identifying Mr. Artem's claims, though, is Mr. Artem's burden – not New England Law's or the Court's. Because the Complaint fails to state a viable breach of contract claim and otherwise fails to identify any federal or state causes of action, it should be dismissed.

Moreover, the references to "intimidation," "medical discrimination," and "disregard for informed consent by omission" are conclusory allegations that are to be disregarded in ruling on a motion to dismiss. Once these allegations are thrown to the side, what remains is that New England

16

Law revised its COVID-19 precautions to comply with updated guidance from the CDC and Massachusetts Department of Health. There are no factual allegations of "intimidation," and New England Law is left to guess at Mr. Artem's legal theory, without any guideposts to help it along. As for "medical discrimination," while the factual allegations *do* state a difference in treatment between fully vaccinated individuals and individuals who are not fully vaccinated, this distinction violates no law. To the contrary, this is the recommended guidance from the United States government, the Commonwealth of Massachusetts, and all other states that have adopted the CDC's recommendations. Finally, the reference to "disregard for informed consent by omission" is not any cognizable claim. Even where an employer or a school requires COVID-19 vaccination, this requirement does not trigger informed consent requirements, which apply only to human subjects in a clinical trial. *Bridges v. Houston Methodist Hosp.*, No. H-21-1774, 2021 WL 2399994, at *2 (S.D. Tex. Jun. 12, 2021) (citing 45 C.F.R. § 46.11).

Nor does Mr. Artem's repeated reference to the vaccines as "experimental" state or allude to a viable claim.[6] As the Court in *Bridges* recently held, in dismissing a suit by a group of nurses who objected to a private hospital's mandatory COVID-19 vaccination policy:

> Federal law authorizes the Secretary of Health and Human Services to introduce into interstate commerce medical products intended for use in an emergency. It also requires the Secretary to ensure the product recipients understand the 'potential benefits and risks of use' and 'the option to accept or refuse the administration of the product.'
>
> Bridges has misconstrued this provision. It confers certain powers and responsibilities to the Secretary of Health and Human Services in an emergency. It neither expands nor restricts the responsibilities

---

[6] The COVID-19 vaccines have been authorized under the Secretary of Health and Human Services' emergency use authorization powers pursuant to 21 U.S.C. § 360bbb-3. *See, e.g.*, Authorizations of Emergency Use of Two Biological Products During the COVID-19 Pandemic; Availability, 86 Fed. Reg. 5200-01.

of private employers; in fact, it does not apply at all to private employers….It does not confer a private opportunity to sue the government, employer or worker.

*Id.*

And the same goes for a private institution of higher education – there is no basis for a student to sue a school based on its requirement that students receive one of the authorized COVID-19 vaccinations or wear a mask and social distance.

Finally, Mr. Artem fails to state a claim against Scott Brown in his official capacity, as those types of claims arise in actions under 42 U.S.C § 1983, and, as discussed below, Mr. Artem has not and cannot state such claim. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Accordingly, Mr. Artem's Complaint fails to state a claim under any legal theory.

**D.     The Constitutional Arguments Raised in Mr. Artem's Petition for Injunctive Relief Also Fail to State a Claim.**

In his Petition, Mr. Artem seems to raise the specter of additional claims to supplement his Complaint. Specifically, he contends that the Updated Policy violates his Fifth and Fourteenth Amendment rights to procedural and substantive due process and his Fourth Amendment right to privacy and to be free from unreasonable searches and seizures. Petition at 4. These claims all fail for the simple reason that New England Law is not a state actor and was not acting under the color of state law when issuing the Updated Policy.

The mechanism for bringing civil claims under the Fourth, Fifth, and Fourteenth Amendment is to bring an action under 42 U.S.C. § 1983 ("Section 1983"). *See* 42 U.S.C. § 1983 (providing a private right of action for U.S. citizens "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws.") The sine qua non of a Section 1983 action is that person against whom such an action is brought must be a "state actor" or acting under "color

18

of state law." *Id.* New England Law is neither, and so any such constitutional claims Mr. Artem brings against it necessarily fails.

The First Circuit has long held that private colleges and universities are not state actors for purposes of Section 1983 claims. *See, e.g.*, *Krohn v. Harvard Law School*, 552 F.2d 21, 23 (1st Cir. 1977) ("As a private entity, Harvard Law School is not subject to suit brought under 42 U.S.C. s 1983.").[7] The result does not change even if, as Mr. Artem asserts, the college or university "accepts and disburses federal student loan funding." *See* Petition at 4; *see also Krohn*, 552 F.2d at 24 ("[T]he receipt by a private university of state financial assistance through tax exemptions and a student aid program, regulation of the university by a public accreditation council and the authority of that council to oversee university disciplinary procedures, either individually or together, were insufficient attributes of governmental involvement to render the university's disciplinary proceedings 'state action' for section 1983 purposes.") To state the constitutional claims identified in his Petition, Mr. Artem must allege that New England Law is a state actor or acting under color of state law. He has not done so, nor can he. Such claims, therefore, fail.

Nor does Mr. Artem's invocation of Title IX salvage his constitutional claims. Mr. Artem seems to argue that New England Law's being subject to Title IX and its regulations somehow makes it subject to his constitutional claims. This argument is meritless. Title IX is entirely irrelevant here. Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681. Mr. Artem does not contend that New England Law is discriminating against him on the basis of his sex. Indeed, he alleges that the basis for New England Law's purported discrimination against him

---

[7] In his Petition, Mr. Artem concedes that the United States Supreme Court has not expanded constitutional protections to private campuses. Petition at 4.

is his vaccination status and unwillingness to wear a mask. *See* Compl. ¶ 9; *see also* Petition at 4.

Quite simply, Title IX is inapposite.

Mr. Artem, therefore, has not stated and cannot state legally colorable constitutional

claims, and his Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, New England Law respectfully requests that this Court dismiss

the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a)(2).

Respectfully submitted,

NEW ENGLAND LAW | BOSTON and
SCOTT BROWN, in his official capacity as
President and Dean,

By their attorneys,

<u>        */s/ Daniel S. Tarlow*        </u>
Walter B. Prince (BBO # 406640)
Daniel S. Tarlow (BBO # 552920)
Laurie F. Rubin (BBO # 564947)
Michael Thompson (BBO # 673497)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
T: 617-456-8000
F: 617-456-8100
wprince@princelobel.com
dtarlow@princelobel.com
lrubin@princelobel.com
mthompson@princelobel.com

Dated: July 6, 2021

105728\000028\3841613

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and copies will be sent by electronic mail to those indicated as non-registered participants and to Plaintiff George Artem (georgeartem1@outlook.com) on July 6, 2021.

*/s/ Daniel S. Tarlow*
Daniel S. Tarlow
